**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Schmitz, et al., | No. CV-26-04035-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| State Farm Fire and Casualty Company, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' motion to remand. (Doc. 12.) For the following reasons, the motion is granted.

**BACKGROUND**

On May 5, 2026, Plaintiffs filed a complaint in Maricopa County Superior Court. (Doc. 1-3 at 4-9.) The complaint alleges as follows. In November 2025, "Plaintiffs suffered damage to their residence and personal property covered under the contract of insurance when they sustained a catastrophic failure within their plumbing system that resulted in a sudden and accidental loss, causing damage to their property." (*Id.* at 6.) Defendant "misrepresented the facts of the loss, assigned an incorrect date of loss for the loss sustained, failed to conduct an adequate or timely investigation into the loss and denied Plaintiff's [sic] claim for loss thereby denying Plaintiffs their rights pursuant to the policy, all without a reasonable basis." (*Id.*) The complaint asserts claims for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing – bad faith. (*Id.* at 5-8.) The complaint seeks an unspecified amount of compensatory damages, "general and

special damages," punitive damages, costs, and attorneys' fees and certifies the case as a "Tier 2" case for purposes of the state-court tiering system. (*Id.* at 8-9.)

On June 5, 2026, Defendant removed the action. (Doc. 1.) The relevant portion of the removal notice provides: "Plaintiff[s] assert[] claims for insurance bad faith and breach of contract and prays for an award of punitive damages. Plaintiffs' Complaint certifies that this is a Tier 2 case (Tier 2 damages pursuant to the Arizona Rules of Civil Procedure are $50,000 to $300,000). Based on information available, the claim is greater than the amount in controversy requirement because Plaintiff[s'] claims sound in breach of contract damages totaling over $22,000 and [Plaintiffs have] also made claims for bad faith, punitive damages and attorney's fees. The court is permitted to include all three claims in evaluating whether or not the amount in controversy has been satisfied. Valid bad faith claims frequently result in damage awards which would exceed the $75,000 threshold. When the breach of contract claim, the bad faith claim and the demand for attorney's fees are aggregated, the amount in controversy meets the jurisdictional requirements." (*Id.* ¶ 7.)

On June 12, 2026, Plaintiffs filed a motion to remand (Doc. 12), which is now fully briefed (Docs. 13, 15). Neither side requested oral argument.

**DISCUSSION**

I.    <u>Legal Standard</u>

"A defendant generally may remove any action filed in state court if a federal district court would have had original jurisdiction." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (citing 28 U.S.C. § 1441(a)). A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the parties are diverse. 28 U.S.C. § 1332(a). The amount in controversy is the "amount at stake in the underlying litigation," which comprises "any result of the litigation, excluding interests and costs, that entails a payment by the defendant," including "*inter alia*, damages (compensatory,

punitive, or otherwise) . . . as well as attorneys' fees[1] awarded under fee shifting statutes." *Gonzales*, 840 F.3d at 648-49 (cleaned up). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Id.*[2]

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* (quotation omitted). If "damages are unstated in a complaint, or, in the defendant's view are understated," the defendant may allege the amount in controversy in the notice of removal, and "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds [the statutory minimum amount] when federal jurisdiction is challenged." *Id.*[3]

Nevertheless, "[d]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met." *Dart*, 574 U.S. at 88-89. "[W]hen a defendant's assertion of the amount in controversy is challenged," "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88; *see also* 28 U.S.C. § 1446(c)(2)(B) ("[R]emoval of the action is proper . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]."). "Under this burden,

---

[1]    "When the applicable substantive law makes the award of an attorney's fee discretionary, a claim that this discretion should be exercised in favor of plaintiff makes the requested fee part of the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998). "But when there is no direct legal authority for an attorney's fee, a request for a fee cannot be included in the computation or the jurisdictional amount." *Id.*

[2]    The "value" of a case is likely not the same as the "amount at stake" in the case, as "[m]ore likely, the value of a case—unlike the amount in controversy—reflects both the amount at stake *and* the plaintiff's likelihood of prevailing." *Arias*, 936 F.3d at 929 n.6.

[3]    In contrast, a removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "[E]vidence may be direct or circumstantial." *Id.* at 1199. "In either event, a damages assessment may require a chain of reasoning that includes assumptions." *Id.* "When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925. A defendant need not "provide evidence proving the assumptions correct," as this would require a defendant to prove its own liability. *Id.* at 927. "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have some reasonable ground underlying them." *Id.* (internal quotation marks omitted).

Nevertheless, there is a "strong presumption" against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).[4] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Where doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

…

…

---

[4] The "strong presumption" against removal in "mine-run diversity cases" was not altered by *Dart*, which addressed removal of class actions under the Class Action Fairness Act. *Dart*, 574 U.S. at 89; s*ee also Johnson v. Twin City Fire Ins. Co.*, 2015 WL 1442644, *2 n.2 (D. Ariz. 2015).

- 4 -

II.     <u>Analysis</u>

     A.     **Tier 2 Designation**

Although the complaint does not seek a specified sum of damages, Defendant asserts in the removal notice that because Plaintiffs certified this as a "Tier 2 case," it follows that Plaintiffs are likely seeking between $50,000 and $300,000 in damages.  (Doc. 1 ¶ 7.)  Plaintiffs disagree, arguing that they certified their case as a Tier 2 case in state court "based upon the characteristics of the case, not its monetary value, as allowed by the Rules," that "[m]onetary values" are merely "an alternative means for tier determination," and that Rule 26.2(b) of the Arizona Rules of Civil Procedure provides that "cases should be considered for assignment to a tier by case characteristics."  (Doc. 12 at 3.)  Defendant responds that "Plaintiffs' argument that their contract damages are only $13,000 is inconsistent with their designation of this matter as a Tier II case, which according to the Arizona Rules of Civil Procedure, involves actions claiming 'more than $50,000 and less than $300,000 in damages.'"  (Doc. 13 at 2 n.2.)

Rule 26.2 of the Arizona Rules of Civil Procedure, which is entitled "Tiered Limits to Discovery Based on Attributes of Cases," "explains how much discovery a party may take in their case."  Ariz. R. Civ. P. 26.2(a).  The Rule specifies that "[c]ases should be considered for assignment to a tier by case characteristics."  Ariz. R. Civ. P. 26.2(b).  The following set of characteristics, which are "not exhaustive," pertain to Tier 2: "These are cases of intermediate complexity. They are likely to have more than minimal documentary evidence and more than a few witnesses.  They are likely to include, but may not include, expert witnesses.  They are likely to involve multiple theories of liability, and may involve counterclaims or cross-claims."  Ariz. R. Civ. P. 26.2(b)(2).  The tier is ultimately assigned by the state court, based on "stipulation or motion, for good cause shown" or on the "totality of the circumstances of that case, consistent with the case characteristics set forth in Rule 26.2(b) and the factors that define proportional discovery"—or, if no tier is assigned as a result of stipulation, motion, or evaluation, the case is "deemed to be assigned a tier based on the damages claimed in the action."  Ariz. R. Civ. P. 26.2(c)(1)-(3).  The damages that

will make a case "deemed" to be a Tier 2 case, if it is not assigned based on its case characteristics, are claims of "more than $50,000 and less than $300,000 in damages." Ariz. R. Civ. P. 26.2(c)(3)(B).

As these provisions make clear, claimed damages are an alternative means of assigning a tier when the preferred method of assignment—"[c]ases should be considered for assignment to a tier by case characteristics"—does not occur. Thus, a plaintiff's decision to certify a case as belonging to a certain tier does not necessarily bear on the plaintiff's assessment of the damages claimed in the case. Rather, as noted by Plaintiffs, the certification could be based on the plaintiff's assessment of the complexity and discovery needs of the case. Furthermore, even if a plaintiff chooses a tier based on claimed damages, "[b]ecause the low end of Tier 2 is $50,000, which falls below the $75,000 threshold in § 1332, a Tier 2 designation does not alone serve as evidence of removability." *Leonard v. Safeco Ins. Co. of Am.*, 2024 WL 657055, *4 (D. Ariz. 2024).

For these reasons, the Court concludes that Plaintiffs' decision to make a Tier 2 designation in this case sheds little light on whether the $75,000 amount-in-controversy requirement is satisfied.

B.    **Contract Damages**

Plaintiffs assert that they "incurred $13,027.59 in damages they allege are owed under the policy of insurance issued by Defendant State Farm," including $5,637.60 for water mitigation by Fast Track Restoration ("Fast Track"), $2,150.00 for granite repair, and $5,239.99 for other repairs completed by Lightning Construction, Inc. ("Lightning Construction"). (Doc. 12 at 2.) Plaintiffs submitted detailed estimates as evidence of the $5,637.60 cost of the water mitigation by Fast Track and the $5,239.99 cost of wall, ceiling, cabinetry, and flooring repairs completed by Lightning Construction. (Doc. 12-1 at 9-24.)

In response, Defendant "does not dispute" the $5,637.60 for water mitigation or the $2,150.00 for granite repair but states that "Lightning Construction prepared a separate repair estimate totaling $17,315.08," such that "Plaintiffs' alleged contract damages total $25,102.68." (Doc. 13 at 3.) Defendant submitted the separate repair estimate from

Lightning Construction. (Doc. 13-1 at 2-7.)

In their reply, Plaintiffs argue that the separate repair estimate "is duplicative of the damages claimed by Plaintiffs" because it includes, for example, "the cost of granite countertops at over $7,000.00," when those damages are already included in Plaintiffs' calculation. (Doc. 15 at 2-3.)

The separate repair estimate from Lightning Construction appears to contain costs for wall, ceiling, cabinetry, and flooring repairs as well as countertop-related repairs, such that the repair estimate totaling $17,315.08 subsumes Plaintiffs' asserted costs of $2,150.00 for granite repair and $5,239.99 for other repairs. However, even accepting that the costs are duplicative, Plaintiffs do not explain in any comprehensible manner how their total out-of-pocket costs are lower than the $17,315.08 comprehensive estimate from Lightning Construction. Thus, the Court concludes that the amount in controversy associated with Plaintiffs' claim for contract damages is more likely than not $22,952.68 ($17,315.08 for repairs and materials for the work completed by Lightning Construction, plus $5,637.60 for water mitigation by Fast Track).

C. **Tort Damages**

"When dealing with . . . an insurer, the client/customer seeks service, security, peace of mind, protection or some other intangible. These types of contracts create special, partly noncommercial relationships, and when the provider of the service fails to provide the very item which was the implicit objective of the making of the contract, then contract damages are seldom adequate, and the cases have generally permitted the plaintiff to maintain an action in tort as well as in contract." *Rawlings v. Apodaca*, 726 P.2d 565, 575 (Ariz. 1986). "When . . . tort damages are recoverable, plaintiff is not limited to the economic damages within the contemplation of the parties at the time the contract was made. Plaintiff may recover all the losses caused by defendant's conduct, including damages for pain, humiliation and inconvenience, as well as for pecuniary losses." *Id.* at 577 (citation omitted).

Although the complaint does not seek a specific amount of tort damages, it indicates

that Plaintiffs are seeking such damages in addition to the contract damages sought in Count One. Among other things, it alleges that Defendant "forced Plaintiffs through needless, adversarial hoops in order to achieve their rights under the policy," emphasizes that one of the purposes of the insurance policy was "to provide peace of mind to the insured," and asserts that Defendant "unjustifiably damaged the objectives sought by the insurance contract"—thus implying that Defendant deprived Plaintiffs of that peace of mind. (Doc. 1-3 at 7-8.)

Plaintiffs suggest in their motion that considering the low value of their contract damages, the amount in controversy is not met "even assuming a generous emotional distress award from the jury." (Doc. 12 at 5.) Plaintiffs add: "Emotional distress damages without a physical injury are uncertain and frequently of a nominal amount. The mere fact that Plaintiff[s] ha[ve] pled breach of the covenant of good faith and fair dealing and requested punitive damages is insufficient to confer diversity jurisdiction. Actual evidence must be offered by [Defendant] to support diversity jurisdiction based upon those claims and [Defendant] has offered none in this case." (*Id*.) In response, Defendant cites eight "jury verdicts for bad faith damages for claims arising under homeowners' policies," ranging "from approximately $17.7k to over $200k." (Doc. 13 at 5.) However, Defendant's motion provides few if any factual details about the eight cited cases. Instead, Defendant simply provides, as attachments, various summaries related to the cases.

As an initial matter, it is questionable whether Defendant's approach is sufficient to satisfy Defendant's burden of proof. Time and again, courts have held that a removing defendant seeking to establish the amount in controversy via reference to awards in other cases must do more than simply provide a bullet-pointed list of those other cases. *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753 (11th Cir. 2010) (explaining that a removing defendant's attempt to establish the amount in controversy by submitting a supplement indicating that "plaintiffs in recent mass tort cases in Alabama had received jury verdicts or settlements exceeding" a particular amount was insufficient because "the supplement failed to explain the facts of those other tort cases or link them to the facts of

the [removed] case" and "was bereft of detail about whether the plaintiffs' complaint was similar to those other cases") (citations omitted); *Venturo v. USAA Cas. Ins. Co.*, 2026 WL 1265697, *3 (D. Nev. 2026) ("Defendant cites to three similar cases with varying jury awards exceeding $75,000 as evidence that Plaintiff's claims meet the jurisdictional threshold.   But Defendant offers zero analysis as to why a similar award should be anticipated under the facts of this case.   Other than stating that a given case involved a similar cause of action (*i.e.*, breach of contract, bad faith and breach of the implied covenant, etc.), Defendant fails to explain how such cases are factually analogous to Plaintiff's claims here.   While jury verdicts in analogous cases can serve as useful evidence of the amount in controversy, they do not here because Defendant simply failed to perform the requisite analysis to show that the jury verdicts Defendant mentions are analogous to the facts of this case.") (cleaned up); *Rybalnik v. Willaims Lea Inc.*, 2012 WL 4739957, *3 (C.D. Cal. 2012) ("Williams Lea's failure to connect the factual circumstances of the cases it cites to the facts of Rybalnik's case renders its bald citations to those cases meaningless. Absent explanation how those cases represent conduct analogous to the conduct Williams Lea allegedly directed at Rybalnik, the Court can only speculate whether Rybalnik could draw similar damages awards here sufficient to meet the amount in controversy required to sustain this Court's exercise of diversity jurisdiction.   Simply put, merely pointing to cases where juries have awarded hefty damages sums in the past without further explanation (by facts or evidence) how the facts in those cases compare to the facts presented here is entirely insufficient to meet Williams Lea's burden to establish the amount in controversy by a preponderance of the evidence.").

Nevertheless, in an abundance of caution, the Court will do its best to consider the applicability of Defendant's bullet-pointed cases.   As the Court observed in a prior order, "[u]nder Ninth Circuit law, a removing defendant seeking to establish that the amount in controversy exceeds the jurisdictional threshold may point to verdicts and settlements in 'similar' cases.   Unfortunately, the law is not a model of clarity on what 'similar' means in this context.   This lack of clarity has caused district courts within the Ninth Circuit to reach

conflicting results concerning the nature of the required similarity showing." *Haire v. Liberty Ins. Co.*, 2020 WL 5088071, *4 (D. Ariz. 2020) (citations omitted). "On one end of the spectrum, some courts have held that 'the cases must be factually identical or, at a minimum, analogous to the case at issue.' Other courts have applied a more relaxed definition of similarity. And in a recent unpublished decision, the Ninth Circuit seemed to suggest that an even more relaxed standard applies, which can be satisfied simply by pointing to another case that involved the same cause of action." *Id.*

Of the various bullet-pointed cases cited by Defendant, the one that seems most similar to this case is *Bond v. American Family Mutual Ins. Co.*, 2008 WL 4182637 (D. Ariz. 2008). There, the plaintiffs sued their insurer for breach of contract and bad faith after the insurer rejected a claim for water damage to the plaintiffs' home arising from a burst pipe. *Id.* Here, similarly, "this matter involves a broken water pipe that damaged Plaintiffs' home." (Doc. 15 at 6.) In *Bond*—similar to here—the plaintiffs alleged that the insurer "owed [them] $29,948.58 for needed repairs." *Bond,* 2008 WL 4182637 at *1. And in *Bond*, the jury ultimately returned a verdict in the plaintiffs' favor that included not just an award of contract damages (albeit an award of $9,346.08, which was less than the plaintiffs sought) but also an award of $17,767.44[5] in tort/bad faith damages. *Id.*

_____

[5] Plaintiffs assert that the bad faith award in *Bond* was only approximately $10,000. (Doc. 15 at 6.) The Court disagrees. The explanatory sentence in *Bond* states as follows: "The panel returned a verdict June 23, 2008 for the plaintiffs in the amount of $9,346.08 for breach of contract, $10,561.07 for breach of covenant of good faith for failing to pay emergency restoration charges and $7,206.44 for delaying payment of additional property damages." *Bond*, 2008 WL 4182637 at *1. The sentence is syntactically ambiguous. Plaintiffs appear to read it suggesting that the three jury awards were (1) for breach of contract, (2) for breach of the covenant of good faith, and (3) for "delay"—in other words, that the "delay" award was separate from the bad faith award. The problem with this reading is that although it is syntactically reasonable, it makes one wonder what legal principle supports the award "for delay." Plaintiffs suggest that "delay" could "possibly" mean "interest on the amount owed," but the phrase "delaying payment of additional property damages" does not easily lend itself to that interpretation—"property damages" appears to refer not to a category of legal damages but rather to additional ways in which the residential property itself was damaged by the water leak. A better reading of the ambiguous sentence, which makes sense syntactically and semantically and accords with legal principles, is that the summary of *Bond* was employing an ellipsis (the rhetorical technique, not the punctuation) to imply the phrase "for breach of the covenant of good faith" into the third phrase. In other words, the three jury awards were (1) for breach of contract, (2) for breach of the covenant of good faith for one thing (failing to pay emergency restorations), and (3) for breach of the covenant of good faith for another thing

Out of everything proffered by Defendant, *Bond* serves as the most persuasive evidence regarding the amount in controversy associated with Plaintiffs' tort/bad faith claim. Per *Bond*, that amount is more likely than not $17,767.44. In contrast, the Court is unpersuaded by Defendant's submission of a declaration from defense counsel that "based on prior litigation experience, Plaintiffs' counsel commonly quantifies bad faith damages by multiplying the amount of contractual damages by the number of months a claim went unpaid." (Doc. 13 at 5-6; Doc. 13-1 at 10 ¶ 6.) Defendant thus argues that because "Plaintiffs allege they submitted their insurance claim to Defendant over seven (7) months ago," "a reasonable estimate for Plaintiffs' alleged bad faith damages is $91,000 ($13,000 x 7 months)." (Doc. 13 at 6.) One difficulty with this approach is that defense counsel's declaration seems to lump together all bad faith cases instead of focusing on the subset of bad faith cases with facts similar to this one. *Cf. Lee v. Safeco Ins. Co. of Am.*, 2022 WL 2383931, *2 (D. Ariz. 2022) (rejecting removing defendant's assertion, based on an earlier case, that "an award of tort damages at least twice the amount of contract damages is a reasonable estimate for determining the amount in controversy in an insurance bad faith case" because the underlying "matter is a property damage insurance claim rather than a disability insurance claim, and as a result, the cases are not analogous"). At any rate, defense counsel's proffered methodology is also inconsistent with the verdict in *Bond*, which, as discussed above, the Court deems the most relatively persuasive piece of evidence proffered by Defendant regarding Plaintiffs' tort claim.

Against this backdrop, at most, Defendant has established that the likely amount in controversy associated with Plaintiffs' tort/bad faith claim is $17,767.44. *Cf. Matheson*, 319 F.3d at 1091 (where a complaint alleged that the insurer "fail[ed] to pay an insured's claim for loss of a truck for a period of less than two months" and "the value of the truck was ultimately determined to be $15,516," "the emotional distress damages associated with such a deprivation would not appear to be significantly in excess of the $10,000 floor pled in the complaint").

(delaying payment of additional property damages).

- 11 -

### D.    **Punitive Damages**

Defendant asserts that "[i]f Plaintiffs were awarded punitive damages, it is more probable than not that a punitive damages award alone would exceed $75,000.00."  (Doc. 13 at 7.)  The only evidence Defendant offers in support of this assertion is listing three cases with large punitive damage awards ($213,000, $750,000, and $1,900,000) in cases that Defendant asserts are "sufficiently similar."  (*Id.*)  Defendant provides no explanation or argument as to why the three cited cases are "sufficiently similar" to this action.

Plaintiffs argue that the three cited cases are "cherry-picked" and have no similarity to this case:

> One[] is a storm claim with over $900,000 in compensatory damages. (Doc. 13-1, Exh. K). The other two are a commercial real estate case (Doc. 13-1, Exh. E), and a fire damage case with insufficient facts included to know how it applies to this case, if it applies at all (Doc. 13-1, Exh. J). In short, while Plaintiffs did claim punitive damages, State Farm has only offered that a punitive damage award is possible in this case.

(Doc. 15 at 7.)

As the party seeking to invoke federal jurisdiction, it is Defendant's burden to provide evidence sufficient to establish the likely amount in controversy associated with Plaintiffs' punitive damage claim.  Defendant has not met that burden here.  *See, e.g.*, *Wysong v. Home Depot USA Inc.*, 2025 WL 1869321, *4 (D. Ariz. 2025) ("This Court acknowledges that at this stage of the litigation, because Plaintiff has prayed for an award of punitive damages, Plaintiff could theoretically be awarded punitive damages.  However, considering the posture of this action, this Court finds that Defendant must prove that an award of punitive damages in an amount that would satisfy the amount in controversy requirement is more likely to than not to occur.  This Court finds that Defendant has failed to so prove."); *Brown v. Bankers Life & Cas. Co.*, 2009 WL 2914215, *3 (D. Ariz. 2009) ("Defendant contends emotional distress and punitive damage awards would exceed $75,000 because several other insurance cases authorized large awards.  While courts sometime analyze comparable awards, Defendant must articulate why the *particular facts* that are alleged in the instant action might warrant extraordinary damages.  Here,

Defendant fails to show any specific reasons emotional distress or punitive damages would be large in *this* case.") (cleaned up); *Haisch v. Allstate Ins. Co.*, 942 F. Supp. 1245, 1249 (D. Ariz. 1996) ("[I]t would be inherently speculative for this Court to conclude that the amount in controversy requirement can be met by simply asserting that large punitive damage awards have been awarded in the past against insurance companies faced with allegations of fraud. As Plaintiff points out, Defendant has failed to articulate why the particular facts that are alleged in the instant action might warrant extraordinary punitive damages.").

### E.    **Attorneys' Fees**

Under A.R.S. § 12-341.01, "the court may award the successful party reasonable attorney fees" to the extent the action arises out of a contract. The reasonable fee award, which is discretionary, "need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid." *Id.*

Defendant argues that "based on prior experience litigating against Plaintiffs' counsel, his attorney's fees are calculated as a 40% contingency fee or $450 per hour if a favorable verdict is obtained." (Doc. 13 at 3; Doc. 13-1 at 9 ¶ 5.) Defendant then estimates that Plaintiffs' counsel will spend 120 hours litigating this case: 20 hours on "document review and general litigation tasks," 25 hours for depositions, 7 hours for written discovery, 10 hours for motion practice, 10 hours for settlement negotiations, 24 hours for trial preparations, and 24 hours for trial itself. (*Id.* at 3-4.)    In reply, Plaintiffs contend that Defendant's time estimates are "very generous" and lack "any evidentiary support" and contend that "whether attorney's fees incurred after removal are to be considered is not settled." (Doc. 15 at 4-5.)

As Plaintiffs note, some courts have held that "[a]ttorneys' fees may be included in the amount in controversy . . . only if they were incurred prior to the date of removal; future attorneys' fees are too speculative to be included." *Patrick v. Costco Wholesale Corp.*, 2013 WL 685892, *1 (D. Ariz. 2013). However, the Ninth Circuit has clarified that future attorneys' fees are not "excluded from the amount in controversy as a matter of law":

> [D]istrict courts are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement. . . . [W]e require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence. We also require the defendant to make this showing with summary-judgment-type evidence. A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof.

*Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

At any rate, Defendant has failed to meet its burden of proof. Indeed, one of Defendant's proffered methodologies for calculating the overall fee award is a 40% contingency fee. But as discussed above, Defendant's evidence establishes that the likely total amount of damages (contract, tort, and punitive) in dispute is at most $40,720.12 (*i.e.*, the $22,952.68 figure calculated in Part II.B and the $17,767.44 figure calculated in Part II.C). A 40% contingency fee on top of such an award would be $16,288.05, and the sum of those two figures is $57,008.17, which falls below the $75,000 threshold.

Admittedly, Defendant's alternative methodology for calculating attorneys' fees—multiplying 120 hours by a $450 hourly rate—which would yield an overall fee award of $54,000, and the sum of that figure and the aforementioned $40,720.12 damages figure would be $94,720.12, which exceeds the $75,000 threshold. But for two reasons, the Court is unwilling to rely on this alternative methodology as the basis for upholding Defendant's removal effort. First, as Plaintiffs note in their reply, Defendant's 120-hour estimate is generous. If that estimate were even pared back to, say, 75 hours, the resulting fee award would be too small to meet the $75,000 threshold.[6] Second, and more important, it is far from an exact science to generate an estimate of the likely fee award in this (or any) case—as evidenced by the fact that Defendant has supplied alternative methodologies that yield disparate results. But when it comes to evaluating the propriety of removal, this sort of uncertainty cuts against the removing party. The guiding principle in this context is that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in

---

[6] The fee award for 75 hours worked at a $450 hourly rate would be $33,750. The sum of that figure and the aforementioned $40,720.12 damages figure is $74,470.12.

the first instance." *Gaus*, 980 F.2d at 566. Here, when one proposed approach for calculating attorneys' fees yields an overall amount in controversy that falls just below the $75,000 threshold, while the other proposed approach yields an overall amount in controversy that just exceeds the $75,000 threshold, this is a strong sign that such doubt exists. And "[w]here doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson*, 319 F.3d at 1090.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to remand (Doc. 12) is **granted**. This case is remanded to Maricopa County Superior Court.

Dated this 24th day of July, 2026.

_____
Dominic W. Lanza
United States District Judge

- 15 -